IN THE CIRCUIT COURT FOR RUTHERFORD COUNTY, TENNESSEE

| | |
|---|---|
| JOHN MORGAN and<br>MONA MORGAN<br><br>Plaintiffs,<br><br>v.<br><br>UNITRIN AUTO AND HOME<br>INSURANCE COMPANY d/b/a<br>KEMPER PREFERRED<br>INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

JURY DEMAND

Case No. 67446

2013 DEC 16 AM 10: 27

## COMPLAINT

Plaintiffs, JOHN MORGAN and MONA MORGAN, for their Complaint against the Defendant, UNITRIN AUTO AND HOME INSURANCE COMPANY D/B/A KEMPER PREFERRED INSURANCE COMPANY, ("Defendant" or "KEMPER"), would respectfully show and allege to the Court as follows:

## GENERAL ALLEGATIONS

1.     Plaintiffs, JOHN MORGAN and MONA MORGAN, own the property located at 121 Gwendolyn Court, La Vergne, Tennessee 37086.

2.     Defendant, KEMPER INSURANCE COMPANY, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee.  The registered agent for service of process of UNITRIN AUTO AND HOME INSURANCE COMPANY d/b/a KEMPER INSURANCE COMPANY is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

EXHIBIT
A

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 1 of 104 PageID #: 4

3. Plaintiffs' claim for relief arises from a covered sinkhole loss to their property located at 121 Gwendolyn Court, La Vergne, Tennessee 37086 ("Property"). Venue is proper pursuant to Tenn. Code. Ann. § 20-4-103.

4. At all times material hereto, Plaintiffs have been the owners of the Property.

5. Plaintiffs renewed or procured a policy of homeowner's insurance, policy number RC 978316 ("Policy"), from Defendant covering the above-referenced property from February 3, 2012 through February 3, 2013. A copy of the certified Policy is attached hereto as Exhibit 1.

6. In consideration of monies paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' property against risks, including sinkholes. The insurance policy provided dwelling insurance coverage in the amount of $217,000.00, in addition to other coverages.

7. Plaintiffs have renewed the Policy each and every year and has paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8. On or about June 15, 2012, while the Policy was in full force and effect, the Property was damaged as a result of sinkhole activity.

9. The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10. A notice of loss and damages was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11. Defendant sent a professional engineer, Rimkus Consulting Group, Inc. ("Rimkus"), to Plaintiffs' Property who confirmed that there was damage to the home, but stated that was caused by perils excluded under the policy and not by sinkhole activity.

12. On February 6, 2013, Defendant sent a letter to Plaintiffs stating that Rimkus determined that sinkhole activity was not a cause of loss and denied the claim.

2

13.     On or about September 20, 2013, Plaintiffs, through counsel, sent a request that the full amount be paid or that Plaintiffs would seek a bad faith penalty for the handling of his claim.

14.     On or about September 6, 2013, Defendant sent correspondence confirming its denial of Plaintiffs' claim.

15.     Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained.

16.     Plaintiffs have been required to retain the services of the undersigned counsel and are obligated to pay them reasonable fee for their services.

## BREACH OF CONTRACT

17.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 16 above as though fully set forth herein.

18.     Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity.

19.     Defendant failed to properly investigate the Property as required under the Policy and by state statute.

20.     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

21.     Defendant failed to investigate the Plaintiffs' claim in a prompt and thorough manner.

22.     Defendant intentionally ignored requests to reconsider its wrongful denial of insurance coverage for the Plaintiffs' claim.

3

23.     Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage. Such acts or omissions were committed intentionally, recklessly, and/or negligently.

24.     Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, and amount equal to such limits for the total constructive loss.

## VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

25.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 24 above as though fully set forth herein.

26.     Defendant has violated the Tennessee Consumer Protection Act of 1977 ("TPCA"), §§ 47-18-101, *et seq.*, by engaging in various unfair, misleading or deceptive acts or practices, including, but not limited to:

(A)     attempting to deceive or misrepresenting or failing to act fairly by not paying Plaintiffs for damages, when Defendant represented in its policy it would provide coverage for covered perils, in violation of Tenn. Code Ann. §§ 47-18-104(a), (b)(5) and (b)(27); and,

(B)     failing to comply with Tenn. Code Ann. §§ 56-7-130 when Defendant had an obligation to comply with Tenn. Code Ann. §§ 56-7-130 in violation of Tenn. Code Ann. §§ 47-18-104(a), and (b)(27).

27.     The Defendant's acts and/or omissions in violation of the TCPA were made willfully and knowingly, thereby entitling Plaintiffs to treble damages and attorney fees pursuant to Tenn. Code Ann. § 47-18-109.

## FRAUD AND MISREPRESENTATION

28.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

4

29.     Defendant committed fraud by intentionally or recklessly misrepresenting to the insured Plaintiffs that the reason for denial was because of a misrepresentation of the meaning of terms within the sinkhole endorsement. Such misrepresentation was committed knowingly and recklessly for the purpose of taking undue advantage of the insured and was justifiably relied on by the insured, who accepted the representation as true.

## UNFAIR CLAIMS PRACTICES

30.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 29 above as though fully set forth herein.

31.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

    (A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105;

    (B)     Refusing to pay Plaintiffs' claim without conducting a reasonable investigation in violation of Tenn. Code Ann. § 56-8-105; and,

    (C)     Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

32.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and supports Plaintiffs' claim for Breach of Contract, violations of the TCPA, and bad faith.

## NEGLIGENCE *PER SE*

33.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34.     Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including but not limited to the following respects:

5

(A)     Defendant denied after receiving a report confirming sinkhole activity Tenn. Code Ann. § 56-7-130 (d)(2);

(B)     Defendant ignored a written certification stating that the cause of the claim was sinkhole activity; and,

(C)     After additional requests by the Plaintiffs, Defendant still failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130-(d)(2).

35.     As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured. Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and § 47-18-101, *et seq.* and were intended to benefit from these laws.

## BAD FAITH

36.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 35 above as though fully set forth herein.

37.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

38.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner; and,

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims.

39.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad

6

faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; (vi) treble damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiffs pray for all relief and damages to which they are entitled under the common law, and the Tennessee Consumer Protection Act, including compensatory damages, treble damages, attorney fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By: _____

***Thompson Trial Group, P.A.***
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:     (813) 254-1800
Facsimile:      (813) 254-1844
Attorney for Plaintiffs

State of Tennessee, Rutherford County:
The undersigned, Circuit Court Clerk of the said County and State, hereby certifies that the foregoing is a correct copy of the instrument filed in the foregoing case in the Circuit Court of Murfreesboro, Tennessee. This 21 day of Jan 2014

Laura Bohling Clerk

Deputy Clerk

7



**KEMPER**
PREFERRED

## Fair Credit Reporting Act – Important Notice

Thank you for choosing UNITRIN AUTO AND HOME INSURANCE COMPANY to provide your insurance coverage.

We consider a variety of factors, such as the coverage you select, your claim history, and your insurance score to determine the amount that you pay for your insurance. We believe this approach enables us to offer our customers competitive prices.

The Fair Credit Reporting Act (FCRA) requires us to send this notice telling you that we are not currently able to offer you our very lowest premium rate for your new or renewal policy, based at least in part upon your insurance score (which is a score derived from your credit history).

Under the FCRA, you can also get a free copy of your consumer report once a year from each of the nationwide consumer reporting agencies by contacting:

Annual Credit Report Request Service
P.O. Box 105281
Atlanta, GA 30348-5281

Telephone: 1-877-322-8228
www.annualcreditreport.com

Since we obtained your insurance score from LexisNexis, a consumer reporting agency, under the FCRA you have the right to obtain a free copy of your consumer report and information in your file from LexisNexis within 60 days of receiving this notice. This report will be sent directly to you by LexisNexis and you have the right to dispute the accuracy or completeness of the report with LexisNexis. To obtain a report from LexisNexis, contact:

LexisNexis Consumer Center
P.O. Box 105289
Atlanta, GA 30348

Telephone: 1-800-456-6004
www.consumerdisclosure.com

If corrections are made to your consumer report, please tell your insurance agent. You may request that we reorder your insurance score and, if appropriate, re-price your policy.



EXHIBIT

Last time we obtained your insurance score, LexisNexis identified these factors in order of significance as having the greatest impact upon that score:

REFERENCE NUMBER: UNAVAILABLE

(1) Number of Accounts that have been Established
(2) Number of Auto Finance Accounts
(3) Percent of Balance to High Credit on Accounts
(4) Number of Retail Accounts Reported in Last 12 Months

LexisNexis did not decide how to rate your policy or make any other decision about your insurance premium. The companies, or company, involved in determining the premium for your policy and in taking the action disclosed in this notice are listed below:

1. The company that issued your policy at the stated premium:

UNITRIN AUTO AND HOME INSURANCE COMPANY

2. The company that employed the underwriting, including placement with issuing company and setting premium: Merastar Insurance Company.

Thank you for your business.

# VEHICLE IDENTIFICATION CARDS
FOLD ALONG PERFORATIONS BEFORE ATTEMPTING TO REMOVE YOUR ID CARDS.

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER**
PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2005 | CHEV | SILVERADO | 1GCEC14152244556 |

AGENT/BROKER
PARKER & WATTS INSURANCE LLC

AGENT NO.
41-7701

4825 TROUSDALE DR STE 224
NASHVILLE, TN 37220

AGENT PHONE NO.
(615) 833-3300

INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN
ISSUED THAT MEETS REQUIREMENTS
OF TENNESSEE FINANCIAL
RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE        032
AK5557 02-09

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER**
PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2012 | CHEV | EQUINOX LT | 2GNALDEK1C6124956 |

AGENT/BROKER
PARKER & WATTS INSURANCE LLC

AGENT NO.
41-7701

4825 TROUSDALE DR STE 224
NASHVILLE, TN 37220

AGENT PHONE NO.
(615) 833-3300

INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN
ISSUED THAT MEETS REQUIREMENTS
OF TENNESSEE FINANCIAL
RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE        032
AK5557 02-09

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER**
PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2005 | CHEV | SILVERADO | 1GCEC14152244556 |

AGENT/BROKER
PARKER & WATTS INSURANCE LLC

AGENT NO.
41-7701

4825 TROUSDALE DR STE 224
NASHVILLE, TN 37220

AGENT PHONE NO.
(615) 833-3300

INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN
ISSUED THAT MEETS REQUIREMENTS
OF TENNESSEE FINANCIAL
RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE        032
AK5557 02-09

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER**
PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2012 | CHEV | EQUINOX LT | 2GNALDEK1C6124956 |

AGENT/BROKER
PARKER & WATTS INSURANCE LLC

AGENT NO.
41-7701

4825 TROUSDALE DR STE 224
NASHVILLE, TN 37220

AGENT PHONE NO.
(615) 833-3300

INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN
ISSUED THAT MEETS REQUIREMENTS
OF TENNESSEE FINANCIAL
RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE        032
AK5557 02-09

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**TO REPORT A CLAIM:**

1. **CALL 1-888-252-2799**
2. **Visit our website www.ekemper.com**

---

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**TO REPORT A CLAIM:**

1. **CALL 1-888-252-2799**
2. **Visit our website www.ekemper.com**

---

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**TO REPORT A CLAIM:**

1. **CALL 1-888-252-2799**
2. **Visit our website www.ekemper.com**

---

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**TO REPORT A CLAIM:**

1. **CALL 1-888-252-2799**
2. **Visit our website www.ekemper.com**

# VEHICLE IDENTIFICATION CARDS
FOLD ALONG PERFORATIONS BEFORE ATTEMPTING TO REMOVE YOUR ID CARDS.

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER** PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2002 | MAZDA | TRIBUTE LX | 4F2YU091772KM23961 |

AGENT/BROKER     AGENT NO.     41-7701

PARKER & WATTS INSURANCE LLC
4825 TROUSDALE DR STE 224     AGENT PHONE NO.
NASHVILLE, TN 37220     (615) 833-3300
INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN ISSUED THAT MEETS REQUIREMENTS OF TENNESSEE FINANCIAL RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE     032

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER** PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 1989 | CHEV | K2500 | 2GCFK29XXK1229524 |

AGENT/BROKER     AGENT NO.     41-7701

PARKER & WATTS INSURANCE LLC
4825 TROUSDALE DR STE 224     AGENT PHONE NO.
NASHVILLE, TN 37220     (615) 833-3300
INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN ISSUED THAT MEETS REQUIREMENTS OF TENNESSEE FINANCIAL RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE     032

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER** PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2002 | MAZDA | TRIBUTE LX | 4F2YU091772KM23961 |

AGENT/BROKER     AGENT NO.     41-7701

PARKER & WATTS INSURANCE LLC
4825 TROUSDALE DR STE 224     AGENT PHONE NO.
NASHVILLE, TN 37220     (615) 833-3300
INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN ISSUED THAT MEETS REQUIREMENTS OF TENNESSEE FINANCIAL RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE     032

---

**TENNESSEE**
**INSURANCE IDENTIFICATION CARD**
UNITRIN AUTO AND HOME INSURANCE COMPANY

**KEMPER** PREFERRED

| COMPANY CODE | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|
| | RC 978316 | 02-03-2012 | 02-03-2013 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 1989 | CHEV | K2500 | 2GCFK29XXK1229524 |

AGENT/BROKER     AGENT NO.     41-7701

PARKER & WATTS INSURANCE LLC
4825 TROUSDALE DR STE 224     AGENT PHONE NO.
NASHVILLE, TN 37220     (615) 833-3300
INSURED
JOHN H MORGAN
MONA S MORGAN
121 GWENDOLYN CT
LA VERGNE, TN 37086

AN INSURANCE POLICY HAS BEEN ISSUED THAT MEETS REQUIREMENTS OF TENNESSEE FINANCIAL RESPONSIBILITY LAW OF 1977.

SEE IMPORTANT NOTICE ON REVERSE SIDE     032

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

TO REPORT A CLAIM:

1. CALL 1-888-252-2799
2. Visit our website www.ekemper.com

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

TO REPORT A CLAIM:

1. CALL 1-888-252-2799
2. Visit our website www.ekemper.com

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

TO REPORT A CLAIM:

1. CALL 1-888-252-2799
2. Visit our website www.ekemper.com

**THIS CARD MUST BE KEPT IN THE INSURED VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger or witness.
2. Name of Insurance Company and policy number for each vehicle involved.

TO REPORT A CLAIM:

1. CALL 1-888-252-2799
2. Visit our website www.ekemper.com



# KEMPER
PREFERRED

## Package Plus Policy

The company providing the insurance afforded by this policy is designated on the Declarations Page.

**PLEASE READ YOUR POLICY CAREFULLY.**

**This policy is a legal contract between you and us.**

# UNITRIN AUTO AND HOME
# INSURANCE COMPANY

A stock insurance company, herein called the Company

Home Office:   5784 Widewaters Parkway
DeWitt, NY 13214
(904) 245-5600

IN WITNESS THEREOF, the Unitrin Auto and Home Insurance Company has caused this policy to be signed by its President and Secretary.

President

Secretary

AK 5743 (08 09)

## INTRODUCTION

### ABOUT YOUR POLICY

This is your Package Plus, a combination homeowners and auto policy. Throughout the policy, "you" and "your" mean the person shown as the "Named Insured" in the Declarations. It also means the spouse if a resident of the same household. "We", "our" and "us" mean the company which issued the policy. The name of that company is listed on your Declarations Page.

Your policy consists of:

- your Declarations Page.

- this policy booklet.

- any endorsements and amendments which we issue with your policy.

### AGREEMENT

We are issuing this policy in return for payment of the premium. By issuing this policy, we agree to provide those insurance coverages described in your policy for which the required premium is paid by the due date. This policy is a legal contract between you and us.

### HOW YOUR POLICY IS ORGANIZED

We want you to understand the coverage provided by your policy. We organized your policy so that it is easy to find information about your coverage. This Introduction explains how to use your policy.

We divided your policy into the following main parts:

The **Declarations Page** gives you important information about your policy, including:

- the name of the company providing this coverage.

- your policy number.

- your agent's name and address.

- when your policy will be in effect.

- the name of any mortgagee or loss payee who may be entitled to recover for a property loss.

- the location of your residence.

- the coverages, amounts of insurance and limits of liability that apply.

- the deductible(s) applying to your policy.

- the autos and trailers covered.

- a list of endorsements and amendments included with your policy at the time the policy itself is issued.

- the initial premium for your policy.

The **Introduction** tells you:

- about your policy.

- what we agree to do by issuing this policy.

- how your policy is organized.

**VS 1226 (10 94)**

Includes copyrighted material of Insurance Services Office, with its permission
Copyright, Insurance Services Office, Inc. 1994

**SECTION I explains the protection we provide for your home:**

Definitions that apply to Sections I and II ................................................................. 1
Property Coverages ................................................................................................. 2
Special Limits of Liability ......................................................................................... 3
Property Not Covered .............................................................................................. 3
Loss of Use ............................................................................................................. 4
Additional Coverages .............................................................................................. 5
Perils Insured Against ............................................................................................. 9
Exclusions ............................................................................................................. 11
Conditions ............................................................................................................. 12

**SECTION II explains the protection we provide for your personal liability:**

Personal Liability ................................................................................................... 16
Medical Payments to Others .................................................................................. 16
Exclusions ............................................................................................................. 16
Additional Coverages ............................................................................................ 20
Conditions ............................................................................................................. 21
Section I and II - Conditions ................................................................................. 22

**SECTION III explains the protection we provide for your use of your auto and for damage to your auto.**

Definitions that apply to Section III ...................................................................... 22

**PART A - LIABILITY COVERAGE**
Insuring Agreement ............................................................................................... 23
Supplementary Payments ...................................................................................... 23
Exclusions ............................................................................................................. 24
Limit of Liability ..................................................................................................... 25
Out of State Coverage ........................................................................................... 25
Financial Responsibility ......................................................................................... 26
Other Insurance ..................................................................................................... 26

**PART B - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement ............................................................................................... 26
Exclusions ............................................................................................................. 26
Limit of Liability ..................................................................................................... 27
Other Insurance ..................................................................................................... 27

**PART C - UNINSURED MOTORISTS COVERAGE**
Insuring Agreement ............................................................................................... 27
Exclusions ............................................................................................................. 28
Limit of Liability ..................................................................................................... 29
Other Insurance ..................................................................................................... 29
Arbitration ............................................................................................................. 29

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
Insuring Agreement ............................................................................................... 30
Transportation Expenses ....................................................................................... 31
Exclusions ............................................................................................................. 31
Limit of Liability ..................................................................................................... 33
Payment of Loss .................................................................................................... 33
No Benefit to Bailee .............................................................................................. 34
Other Sources of Recovery .................................................................................... 34
Appraisal ............................................................................................................... 34

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** ............................................... 34

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 16 of 104 PageID #: 19

|                                                     | Beginning On Page |
|-----------------------------------------------------|------|
| **PART F - OTHER PROVISIONS**                        |      |
| Bankruptcy                                           | 35   |
| Fraud                                                | 35   |
| Legal Action Against Us                              | 35   |
| Our Right to Recover Payment                         | 35   |
| Policy Period and Territory                          | 35   |
| Two or More Auto Policies                            | 35   |
|                                                     |      |
| **ENDORSEMENTS INCLUDED IN SECTION III**             |      |
| Loss Payable Clause                                  | 36   |
| Towing and Labor Costs Coverage                      | 36   |

SECTION IV – GENERAL POLICY CONDITIONS explains how your policy can be changed or terminated.

| Changes                                             | 36   |
| Premium                                             | 36   |
| Termination                                         | 37   |
| Cancellation                                        | 37   |
| Nonrenewal                                          | 37   |
| Automatic Termination                               | 37   |
| Transfer of Your Interest in this Policy            | 37   |
| Deductibles                                         | 37   |

# PACKAGE PLUS

**DEFINITIONS THAT APPLY TO SECTIONS I AND II**

The following words and phrases are defined as used in Sections I and II.

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      1) Which is shown in the Declarations; or

      2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. or 4.b. above;

   d. Any part of a premises:

      1) Not owned by an "insured"; and

      2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, condominium unit, other structures, or grounds; or

   b. That part of any other building;

   where you reside and which is shown in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown in the Declarations.

9. "Personal injury" means injury arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment, or malicious prosecution;

   b. Libel, slander or defamation of character; or

   c. Invasion of privacy, wrongful eviction or wrongful entry.

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

3. Additions, alterations, fixtures, improvements or installations if you maintain a private residence in a condominium unit that you own at the "insured location." They must be part of the building within your unit. We cover items of real property that pertain exclusively to your condominium unit. We also cover other property which you are required by the Condominium Association agreement to insure. We do not cover:

   a. Structures used in whole or in part for "business" purposes; or

   b. Structures rented or held for rental to any person not a tenant of the "residence premises," unless used solely as a private garage.

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is $5,000 or 10% of the Blanket Property Limit, whichever is greater. But this amount does not increase the Blanket Property Limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Blanket Property Limit. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1,000 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1,000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1,000 on trailers not used with watercraft.

5. $5,000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones; but not exceeding $1,000 for any one article.

6. $2,000 for loss by theft of firearms.

7. $5,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2,500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or media;

    for use with any electronic apparatus.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances.

   This includes:

   a. Their equipment and accessories; or

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

   1) Accessories or antennas; or

   2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

This exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped.

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverage 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

## COVERAGE D - LOSS OF USE

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 21 of 104 PageID #: 24

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

    a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    We will also pay your reasonable expense, up to $500 in the aggregate for the removal from the "residence premises" of:

    a. Your trees(s) felled by the peril of Windstorm or Hail;

    b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

    c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

    provided the tree(s) damages a covered structure.

    The cost of removing debris or fallen trees under this provision is included in the Blanket Property Limit that applies to the damaged property. It does not increase the Blanket Property Limit.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

    This coverage:

    a. Does not increase the Blanket Property Limit applying to the property being repaired;

    b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned by or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

    The limit of liability for this coverage will not be more than 5% of the Blanket Property Limit or more than $500 for any one tree, shrub or plant. We do not cover property grown for business purposes.

    This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

    This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the Blanket Property Limit that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

    We will pay up to $5,000 for:

    a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name.

    b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name.

    c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

   a. By a resident of your household;

   b. By a person who has been entrusted with either type of card; or

   c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

   a. We may investigate and settle any claims or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

   Condition 1. Policy Period, under SECTION I AND II - CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this additional coverage;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the Blanket Property Limit applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

    We cover:

    a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

    b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

    This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

    Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

    This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

    a. **Fire or lightning.**

    b. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    c. **Explosion.**

    d. **Riot or civil commotion.**

    e. **Aircraft,** including self-propelled missiles and spacecraft.

    f. **Vehicles.**

    g. **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

    h. **Vandalism or malicious mischief.**

    i. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

    j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

    k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    1) To the system or appliance from which the water or steam escaped;

    2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

    3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

    l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

1) Maintain heat in the building; or

2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

11. **Building Additions and Alterations.** The following additional coverage applies if the "residence premises" shown in the Declarations is a rented dwelling unit.

Under Coverage C, we insure the building improvements, or installations made or acquired at your expense to the part of the "residence premises" used exclusively by you. The limit of liability for this coverage will not be more than 10% of the Blanket Property Limit. This coverage is additional insurance.

12. **Refrigerated Property.** We insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

1. Interruption of electrical service to the refrigeration unit. The interruption must be caused by damage to the generating or transmitting equipment; or

2. Mechanical failure of the unit storing the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

The Section I - Power Failure exclusion does not apply to this coverage.

The following deductible applies to a covered loss under Refrigerated Property:

We will pay only that part of the loss that exceeds $100. The Section I deductible does not apply to this coverage.

13. **Lock Replacement Coverage.** If your house keys are lost or stolen and you notify us of this in writing within 72 hours of the discovery, we will pay 50 per cent, not to exceed $500, of the cost to replace your house locks. The Section I deductible does not apply to this coverage.

14. **Ordinance or Law.**

If the "residence premises" shown in the Declarations is a rented dwelling unit the words 'covered building' used below refer to property covered under Additional Coverage 11. Building Additions and Alterations.

a. You may use up to 10% of the Blanket Property Limit for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST;

2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

Case 2:14-cv-00519   Document 1-1   Filed 02/18/14   Page 25 of 104 PageID #: 28

c. We do not cover:

    1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

# SECTION I – PERILS INSURED AGAINST

### COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES

We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

    a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

        1) Maintain heat in the building; or

        2) Shut off the water supply and drain the system and appliances of water;

    b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

        1) Fence, pavement, patio or swimming pool;

        2) Foundation, retaining wall or bulkhead; or

        3) Pier, wharf or dock;

    c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

    e. Any of the following:

        1) Wear and tear, marring, deterioration;

        2) Inherent vice, latent defect, mechanical breakdown;

        3) Smog, rust or other corrosion, mold, wet or dry rot;

        4) Smoke from agricultural smudging or industrial operations;

        5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

        Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

        6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

        7) Birds, vermin, rodents, or insects; or

        8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air condi-
tioning or automatic fire protective sprinkler system or household appliance, we cover loss
caused by the water including the cost of tearing out and replacing any part of a building neces-
sary to repair the system or appliance. We do not cover loss to the system or appliance from
which this water escaped.

3. **Excluded under Section I – Exclusions.**

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or ex-
cepted in this policy is covered.

---

## COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to property described in Coverage C caused by a peril listed below
unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet,
    sand or dust unless the direct force of wind or hail damages the building causing an opening in a
    roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines
    or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known location when it is likely that the
    property has been stolen.

    This peril does not include loss caused by theft:

    a. Committed by an "insured";

    b. In or to a dwelling under construction, or of materials and supplies for use in the construction un-
       til the dwelling is finished and occupied; or

    c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

    This peril does not include loss caused by theft that occurs off the "residence premises" of:

    a. Property while at any other residence owned by, rented to, or occupied by an "insured," except
       while an insured is temporarily living there. Property of a student who is an "insured" is covered
       while at a residence away from home if the student has been there at any time during the 45
       days immediately before the loss;

    b. Watercraft, and their furnishing, equipment and outboard engines or motors; or

    c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall
    of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.**

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.**

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning any ordinance or law:

1) Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a. does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

2) The requirements of which result in a loss in value to property; or

3) Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

1) Fire;

2) Explosion; or

3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

    c. **Water Damage,** meaning:

       1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

       2) Water which backs up through sewers or drains or which overflows from a sump; or

       3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

       Direct loss by fire, explosion or theft resulting from water damage is covered.

    d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

    e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

    f. **War,** including the following and any consequence of any of the following:

       1) Undeclared war, civil war, insurrection, rebellion or revolution;

       2) Warlike act by a military force or military personnel; or

       3) Destruction, seizure or use for a military purpose.

       Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

    g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

    h. **Intentional Loss,** meaning any loss arising out of any act committed:

       a. By or at the direction of an "insured"; and

       b. With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

    a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

    b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

    c. **Faulty, inadequate or defective:**

       1) Planning, zoning, development, surveying, siting;

       2) Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;

       3) Materials used in repair, construction, renovation or remodeling; or

       4) Maintenance;

       of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

    b. For more than the applicable limit of liability.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 29 of 104 PageID #: 32

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. Give prompt notice to us or our agent;

   b. Notify the police in case of loss by theft;

   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. Protect the property from further damage. If repairs to the property are required, you must:

     1) Make reasonable and necessary repairs to protect the property; and

     2) Keep an accurate record of repair expenses;

   e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

     1) Show the damaged property;

     2) Provide us with records and documents we request and permit us to make copies; and

     3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same.

   g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

     1) The time and cause of loss;

     2) The interest of the "insured" and all others in the property involved and all liens on the property;

     3) Other insurance which may cover the loss;

     4) Changes in title or occupancy of the property during the term of the policy;

     5) Specifications of damaged buildings and detailed repair estimates;

     6) The inventory of damaged personal property described in 2.e. above;

     7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

     8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. We will pay actual cash value for a covered loss to the following personal property. This means there may be a deduction for depreciation for property:

     1) Which by its inherent nature cannot be replaced.

     2) Not maintained in good or workable condition.

     3) Which at time of loss is either obsolete or useless to you.

    However, our payment will not exceed the lesser of the:

     1) Amount necessary to repair or replace the damaged or lost property; or

     2) Blanket Property Limit or any special limit applying to the property.

   b. We will pay the cost of repair or replacement for a covered loss to other property. This means there will be no deduction for depreciation.

     1) For personal property, our payment for loss will not exceed the least of the:

       a) Blanket Property Limit applying to the property;

       b) Special limit applying to the property;

       c) Actual cost incurred to repair, restore or replace at time of loss; or

       d) Replacement value at time of loss.

2) For other property, our payment for loss will not exceed the least of the:

    a) Blanket Property Limit applying to the property;

    b) Replacement cost of that part of the property damaged for equivalent construction and use on the same premises; or

    c) Amount actually and necessarily spent to repair or replace the damaged property.

c. The value of the property insured is not agreed upon but shall be determined at the time of loss.

d. We will pay no more than the actual cash value of the damage unless:

    1) Actual repair or replacement is complete; or

    2) The cost to repair or replace the damage for the entire loss is less than:

        a) $1,000 under b.1) above; or

        b) $2,500 under b.2) above.

e. You may make a claim for loss on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis within 180 days after the loss.

If the Scheduled Personal Property Endorsement is attached to this policy, Condition 2.c. of that endorsement is replaced by this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the Blanket Property Limit that applies under this policy bears to the total amount of insurance covering the loss. However, if there is other insurance in the name of the condominium association covering the same property, this insurance shall be excess over the other insurance.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

**12. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**17. Blanket Property Limit.** The Blanket Property Limit shown in the Declarations for each "insured location" is the most we will pay for a covered loss at that "insured location." This Blanket Property Limit applies in the aggregate for all coverages under this section. It includes these Additional coverages:

a. Debris Removal;

b. Reasonable Repairs;

c. Property Removed; and

d. Collapse.

The other Additional Coverages apply in addition to the Blanket Property Limit.

# SECTION II - LIABILITY COVERAGES

## COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" or because of "personal injury" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

## COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

    a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

    b. Is caused by the activities of an "insured";

    c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

    d. Is caused by an animal owned by or in the care of an "insured."

# SECTION II - EXCLUSIONS

1. Coverage E - Personal Liability and Coverage F - Medical Payment to Others do not apply to "bodily injury" or "property damage":

    a. Which is expected or intended by the "insured";

    b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."

    But this exclusion does not apply to the part-time "business" pursuits of insured minors;

    c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

        1) On an occasional basis if used only as a residence;

        2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        3) In part, as an office, school, studio or private garage;

    d. Arising out of the rendering of or failure to render professional services;

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 33 of 104 PageID #: 36

e. Arising out of a premises:

    1) Owned by an "insured";

    2) Rented to an "insured"; or

    3) Rented to others by an "insured";

    that is not an "insured location";

f. Arising out of:

    1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

    2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

    3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph 1) or 2) above.

    This exclusion does not apply to:

    1) A trailer not towed by or carried on a motorized land conveyance.

    2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

        a) Not owned by an "insured"; or

        b) Owned by an "insured" and on an "insured location";

    3) A motorized golf cart when used to play golf on a golf course;

    4) A vehicle or conveyance not subject to motor vehicle registration which is:

        a) Used to service an "insured's" residence;

        b) Designed for assisting the handicapped; or

        c) In dead storage on an "insured location";

g. Arising out of:

    1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

    2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

    3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

    Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

    1) That are not sailing vessels and are powered by:

        a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

        b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

        c) One or more outboard engines or motors with 50 total horsepower or less;

        d) One or more outboard engines or motors with more than 50 total horsepower if the outboard engine or motor is not owned by an "insured";

        e) Outboard engines or motors of more than 50 total horsepower owned by an "insured" if:

           i) You acquire them prior to the policy period; and

              a) You declare them at policy inception; or

  b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

 ii) You acquire them during the policy period.

 This coverage applies for the policy period.

 2) That are sailing vessels, with or without auxiliary power:

  a) Less than 26 feet in overall length;

  b) 26 feet or more in overall length, not owned by or rented to an "insured."

 3) That are stored;

h. Arising out of:

 1) The ownership, maintenance, use, loading, or unloading or an aircraft;

 2) The entrustment by an "insured" of an aircraft to any person; or

 3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

 An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

 1) Undeclared war, civil war, insurrection, rebellion or revolution;

 2) Warlike act by a military force or military personnel; or

 3) Destruction, seizure or use for a military purpose.

 Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

a. Liability:

 1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

 2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

  a) That directly relate to the ownership, maintenance or use of an "insured location"; or

  b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

  unless excluded in 1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

 1) Voluntarily provided; or

 2) Required to be provided;

 by the "insured" under any:

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 35 of 104 PageID #: 38

       1) Workers compensation law;

       2) Nonoccupational disability law; or

       3) Occupational disease law;

  e. "Bodily injury" or "property damage" for which an "insured" under this policy:

       1) Is also an insured under a nuclear energy liability policy; or

       2) Would be an insured under that policy but for the exhaustion of its limit of liability.

    A nuclear energy liability policy is one issued by:

       1) American Nuclear Insurers;

       2) Mutual Atomic Energy Liability Underwriters;

       3) Nuclear Insurance Association of Canada;

    or any of their successors; or

  f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined;

  g. "Personal injury" arising from:

       1) Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

       2) Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";

       3) Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

       4) Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

       5) Civic or public activities performed for pay by an "insured"; or

       6) Injury to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

  a. To a "residence employee" if the "bodily injury":

       1) Occurs off the "insured location"; and

       2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

  b. To any person eligible to receive benefits:

       1) Voluntarily provided; or

       2) Required to be provided;

    under any:

       1) Workers compensation law;

       2) Nonoccupational disability law; or

       3) Occupational disease law;

  c. From any:

       1) Nuclear reaction;

       2) Nuclear radiation; or

       3) Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

       4) Any consequence of any of these; or

  d. To any person other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

# SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:
   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;
   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;
   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income), up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or
   e. Arising out of:
      1) A "business" engaged in by an "insured";
      2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or
      3) The ownership, maintenance or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or
   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
      2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:
   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.1);
2. Condition 1. Policy Period, under SECTION I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E - Personal Liability for all damages resulting from any one "occurrence" will not be more than the limit of liability for Personal Liability as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F - Medical Payments to Others for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Medical Payments to Others as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:
      1) The identity of the policy and "insured";
      2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
      3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:
      1) To make settlement;
      2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
      3) With the conduct of suits and attend hearings and trials; and
      4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and
   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payment to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTION I AND II - CONDITIONS

1. **Policy Period.** Sections I and II apply only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** We do not provide coverage if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

# SECTION III - PERSONAL AUTO COVERAGE

## DEFINITIONS

For purpose of this Section, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

The following words and phrases are defined as used in this Section. They are in quotation marks when used.

"Bodily injury" means bodily harm, sickness or disease, including death that results.

"Business" includes trade, profession or occupation.

"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

"Occupying" means in, upon, getting in, on, out or off.

"Property damage" means physical injury to, destruction of or loss of use of tangible property.

"Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

"Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. A private passenger auto; or

   b. A pickup or van that:

1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and
2) Is not used for the delivery or transportation of goods and materials unless such use is:
   a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or
   b) For farming or ranching.

This provision (2.) applies only if:

a. You acquire the vehicle during the policy period;
b. You ask us to insure it within 30 days after you become the owner; and
c. With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.
4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;
b. Repair;
c. Servicing;
d. Loss; or
e. Destruction.

This provision (4.) does not apply to Coverage for Damage to Your Auto.

# SECTION III - PART A - LIABILITY COVERAGE

## INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."
2. Any person using "your covered auto."
3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.
2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.
3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit for this coverage.
4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

## EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:

    a. Rented to;

    b. Used by; or

    c. In the care of;

    that "insured."

    This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

    | | |
    |---|---|
    | a. Selling; | d. Storing; or |
    | b. Repairing; | e. Parking; |
    | c. Servicing; | |

    vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

    a. You;

    b. Any "family member"; or

    c. Any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.

    This exclusion (A.7.) does not apply to the maintenance or use of a:

    a. Private passenger auto;

    b. Pickup or van that:

        1) You own; or

        2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

        | | |
        |---|---|
        | a) Breakdown; | d) Loss; or |
        | b) Repair; | e) Destruction; or |
        | c) Servicing; | |

    c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured":

    a. Is an insured under a nuclear energy liability policy; or

    b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

    A nuclear energy liability policy is a policy issued by any of the following or their successors:

    a. American Nuclear Insurers;

    b. Mutual Atomic Energy Liability Underwriters; or

    c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.

   This exclusion (B.1.) does not apply:
   a. While such vehicle is being used by an "insured" in a medical emergency; or
   b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member."

   However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:
   a. Competing in; or
   b. Practicing or preparing for;
   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
   1. "Insureds";
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
   1. Part B or Part C of this policy; or
   2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

# SECTION III – PART B – MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and
2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":
   a. While "occupying"; or
   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

## EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers compensation benefits are required or available for the "bodily injury."
5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.
6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member."

   However, this exclusion (6.) does not apply to you.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 43 of 104 PageID #: 46

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van that you own; or

   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part A or Part C of this policy; or

   2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# SECTION III - PART C - UNINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."
2. Any other person "occupying" "your covered auto."
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.
3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto."
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

---

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.
2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.
3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers compensation law; or
2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or
2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or
2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 46 of 104 PageID #: 49

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

# SECTION III – PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. Breakdown;    d. Loss; or
   b. Repair;      e. Destruction.
   c. Servicing;

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 47 of 104 PageID #: 50

## TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $25 per day, to a maximum of $750, for:

1. Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

a. Beginning 48 hours after the theft; and

b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to:

   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:

      1) Radios and stereos;

      2) Tape decks; or

3) Compact disc players;

b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

1) Citizens band radios;

2) Telephones;

3) Two-way mobile radios;

4) Scanning monitor receivers;

5) Television monitor receivers;

6) Video cassette recorders;

7) Audio cassette recorders; or

8) Personal computers;

c. Tapes, records, discs, or other media used with equipment described in a. or b.; or

d. Any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

1) The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

2) The equipment is:

a) Removable from a housing unit which is permanently installed in the auto;

b) Designed to be solely operated by use of the power from the auto's electrical system; and

c) In or upon "your covered auto" or any "non-owned auto";

at the time of the loss.

b. Any other electronic equipment that is:

1) Necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

2) An integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

a. Acquire during the policy period; and

b. Ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

a. Awnings or cabanas; or

b. Equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a. Special carpeting and insulation, furniture or bars;

    b. Facilities for cooking and sleeping;

    c. Height-extending roofs; or

    d. Custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a. Selling;          d. Storing; or
    b. Repairing;       e. Parking;
    c. Servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

    a. You; or

    b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

    1. Actual cash value of the stolen or damaged property; or

    2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. Pay its chosen appraiser; and

   2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

# SECTION III - PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

   1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

   3. Submit, as often as we reasonably require:

      a. To physical exams by physicians we select. We will pay for these exams.

      b. To examination under oath and subscribe the same.

   4. Authorize us to obtain:

      a. Medical reports; and

      b. Other pertinent records.

   5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

   1. Promptly notify the police if a hit-and-run driver is involved.

   2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

   1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

   2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

   3. Permit us to inspect and appraise the damaged property before its repair or disposal.

# SECTION III - PART F - OTHER PROVISIONS

**Bankruptcy**

Bankruptcy or insolvency of the "Insured" shall not relieve us of any obligations under this policy.

**Fraud**

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

**Legal Action Against Us**

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

    1. We agree in writing that the "insured" has an obligation to pay; or

    2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

**Our Right To Recover Payment**

A. If we make a payment under this Section and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

    1. Whatever is necessary to enable us to exercise our rights; and

    2. Nothing after loss to prejudice them.

    However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this Section and the person to or for whom payment is made recovers damages from another, that person shall:

    1. Hold in trust for us the proceeds of the recovery; and

    2. Reimburse us to the extent of our payment.

**Policy Period and Territory**

A. This Section applies only to accidents and losses which occur:

    1. During the policy period as shown in the Declarations; and

    2. Within the policy territory.

B. The policy territory for this Section is:

    1. The United States of America, its territories or possessions;

    2. Puerto Rico; or

    3. Canada.

    Section III of the policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

**Two or More Auto Policies**

If this Section and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

VS 1226 (10 94)

## ENDORSEMENTS INCLUDED IN SECTION III

### PP 03 05 (Ed. 08 86) LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance, with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee, we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

### PP 03 03 (Ed. 04 86) TOWING AND LABOR COSTS COVERAGE

If a premium and limit of liability is shown in the Declarations for this coverage, we will pay towing and labor, costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

## SECTION IV - GENERAL POLICY CONDITIONS

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. Our request for an appraisal or examination shall not waive any of our rights.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1. The number, type or use classification of insured vehicles;

   2. Operators using insured vehicles;

   3. The place of principal garaging of insured vehicles;

   4. Coverage, deductible or limits.

   If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   1. A subsequent edition of your policy; or

   2. An Amendatory Endorsement.

### PREMIUM

The premium stated in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy the premium shall be computed by us in accordance with our manuals then in use.

## TERMINATION

### Cancellation

A. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

B. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. The effective date of cancellation stated in the notice shall become the end of the policy period.

Proof of mailing shall be sufficient proof of notice.

1. When you or your lender if named as a payor on this policy have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

3. When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we will cancel only:

   a. For nonpayment of premium; or

   b. If the policy was obtained through material misrepresentation of fact. In this case (3.b.) we will give you notice at least 30 days before the date cancellation takes effect.

C. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### Nonrenewal

We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy.

Proof of mailing shall be sufficient proof of notice.

### Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current period. Failure to pay the required renewal or continuation premium by either you or your lender when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if a resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; or

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to:

   a. The representative's legal responsibility to maintain or use "your covered auto"; and

   b. The premises and property of the deceased covered under the policy at the time of death.

B. Coverage will only be provided until the end of the policy period.

## DEDUCTIBLES

If loss or damage arising out of one occurrence involves more than one section of this policy and if the loss or damage under each section exceeds the deductible for that section, only one deduction will be taken. This shall be the highest deductible amount that applies.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 54 of 104 PageID #: 57

Package Plus
HOME - Changes To Your Policy For The State Of Tennessee

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SECTION I - PROPERTY COVERAGES
## COVERAGE C - PERSONAL PROPERTY

**Special Limits of Liability**

Items 10. and 11. are deleted and replaced by the following:

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   a. Accessories and antennas; or

   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item 10.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   b. Is away from the "residence premises"; and

   c. Is used at any time or in any manner for any "business" purpose.

   Electronic apparatus includes:

   a. Accessories and antennas; or

   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item 11.

**Property Not Covered**

Item 3.b. is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of

motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

   1) Accessories or antennas; or

   2) Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item 3.b.

   The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

## COVERAGE D - LOSS OF USE

Item 1. is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## ADDITIONAL COVERAGES

8. **Collapse** is deleted and replaced by the following:

8. **Collapse**

   a. With respect to this Additional Coverage:

      1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      2) A building or any part of a building that is in danger of falling down or

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 2001

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 55 of 104 PageID #: 58

caving in is not considered to be in a state of collapse.

3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

1) The Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse.

3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse.

4) Weight of contents, equipment, animals or people;

5) Weight of rain which collects on a roof; or

6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items (2), (3), (4), (5), and (6) unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damage covered property.

If the Special Personal Property Coverage endorsement is attached to the policy, Section I – Additional Coverages 8. Collapse in that endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

b.1) Perils Insured Against in Coverages A. and B.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass or Safety Glazing Material.**

a. We cover:

1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building storm door or storm window; and

3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.3) above; or

2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 56 of 104 PageID #: 59

## SECTION I – PERILS INSURED AGAINST

Item 2.e.3) is deleted and replaced with the following:

3) Smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbes.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. Whenever smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss occurs, the smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss and any resulting loss is always excluded under this policy, however caused.

## SECTION I - EXCLUSIONS

1.b. Earth Movement is deleted and replaced by the following:

1.b. Earth Movement, meaning

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide, or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

1.d. Power Failure is deleted and replaced by the following:

1.d. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST. .

1.i. Smog, Rust or Other Corrosion, Mold, Fungus, Wet or Dry Rot or Other Microbes is being added:

1.i. Smog, Rust or Other Corrosion, Mold, Fungus, Wet or Dry Rot or Other Microbes.

We do not cover any loss consisting of, caused by, contributed to, or aggravated by smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. Whenever smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss occurs, the smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss and any resulting loss is always excluded under this policy, however caused.

## SECTION I - CONDITIONS

12. Mortgage Clause. Under Dwelling and Unit-Owners policies, the following paragraph is added:

The rights and obligations set forth above apply to any party who has an insurable interest in the "residence premises" who is not an "insured".

## SECTION II - EXCLUSIONS

Under 1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others; item a. is deleted and replaced by the following:

a. Which is expected or intended by one or more "insureds":

Item f.3 is deleted and replaced by the following:

This exclusion does not apply to:

3) A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

a) A golfing facility and is parked or stored there, or being used by an "insured" to:

i) Play the game of golf or for other recreational or leisure activity allowed by the facility;

ii) Travel to or from an area where motor vehicles or golf carts are parked or stored; or

iii) Cross public roads at designated points to access other parts of the golfing facility; or

b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the

Case 3:14-cv-00519 Document 1-1 Filed 02/18/14 Page 57 of 104 PageID #: 60

authority of a property owners association and contains an "insured's" residence.

Item m. is being added:

m. Arising out of loss consisting of, caused by, contributed to, or aggravated by smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. Whenever smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss occurs, the smog, rust or other corrosion, mold, fungus, wet or dry rot or other microbial loss and any resulting loss is always excluded under this policy, however caused.

SECTION I AND II - CONDITIONS

2. Concealment or Fraud is deleted and replaced by the following:

2. Concealment or Fraud.

a. Under **SECTION I - PROPERTY COVERAGES**, with respect to all "insured's" covered under this policy, we provide no coverage for loss under SECTION I - PROPERTY COVERAGES if, whether before of after a loss, one or more "insureds" have:

1) Intentionally concealed or misrepresented any material fact or circumstance;

2) Engaged in fraudulent conduct; or

3) Made false statements;

relating to this insurance.

b. Under **SECTION II - LIABILITY COVERAGES**, we do not provide coverage to one or more "insured's" who, whether before or after a loss, have:

1) Intentionally concealed or misrepresented any material fact or circumstance;

2) Engaged in fraudulent conduct; or

3) Made false statements;

relating to this insurance

All other provisions of this policy apply.

Case 3:14-cv-00519　Document 1-1　Filed 02/18/14　Page 58 of 104 PageID #: 61

## NON-SMOKING HOUSEHOLD DISCOUNT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Your policy premium has been adjusted to reflect a discount for qualifying as a non-smoking household.

**VS 2105 (01 06)**

**Package Plus**
**EXTENDED DWELLING REPLACEMENT COST COVERAGE**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If a property loss covered under Section I exceeds the Blanket Property Limit for the "insured location" of your principal residence:

1. We will increase the Blanket Property Limit shown in the Declarations up to          %.*

2. This agreement applies only if you:

   a) Paid premiums based on annually revised dwelling values as updated by us;

   b) Notified us within 30 days after completion of each structural change that increased the replacement cost of your dwelling by $5,000 or more. This includes a series of changes that, when added together, total such an increase; and

   c) Repair or replace the damaged property.

3. If the Earthquake Endorsement is on this policy the following exclusion applies:

   **Special Earthquake Exclusion**

   With respect to this Extended Dwelling Replacement Cost Coverage endorsement, the Section I – Earth Movement exclusion applies.

* Entries may be left blank if shown elsewhere in the policy for this coverage.

**VS 2292 (04 09)**

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 2000

**Package Plus**
**CLASSIC COVERAGE ENHANCEMENT**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C - PERSONAL PROPERTY**

**Special Limits of Liability**

Special limits 1. through 9. are replaced by the following:

1. $1,000 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $5,000 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $3,000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $3,000 on trailers not used with watercraft.

5. $5,000 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semi-precious stones.

6. $5,000 for loss by theft, misplacing or losing of firearms.

7. $5,000 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $5,000 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $500 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. in the contract.

**ADDITIONAL COVERAGES**

Additional Coverages 1., 6., and 7. are changed:

1. **Debris Removal**

   Debris Removal is replaced by the following:

   We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   We will also pay your reasonable expense, up to $500 in the aggregate for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C.

   The cost of removing debris or fallen trees under this provision is included in the Blanket Property Limit that applies to the damaged property. It does not increase the Blanket Property Limit.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money**

   The $5,000 limit is deleted and replaced with a limit of $10,000.

7. **Loss Assessment**

   The $1,000 limit is deleted and replaced with a limit of $10,000.

   This coverage is additional insurance.

The following Additional Coverages are added:

**Identity Fraud Expense**

With respect to the provisions of Identity Fraud Expense only, the following definitions are added:

a. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 61 of 104 PageID #: 64

# CLASSIC COVERAGE ENHANCEMENT

federal law or a felony under any applicable state or local law.

b. "Expenses" means:

1) Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

3) Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

4) Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

5) Reasonable attorney fees incurred as a result of "identity fraud" to:

(a) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;

(b) Remove any criminal or civil judgments wrongly entered against an "insured"; and

(c) Challenge the accuracy or completeness of any information in a consumer credit report.

6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

We will pay up to $25,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

## Exclusions

The following additional exclusions apply to this coverage:

We do not cover:

a. Loss arising out of or in connection with a "business".

b. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

c. Loss other than "expenses".

## Special Deductible

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expense coverage.

## Section I - Conditions

2. **Your Duties After Loss**

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

## Reward Coverage

We will pay 10% of the amount of loss up to a maximum of $1,000 to an eligible person providing information leading to the arrest and conviction of anyone who perpetrates an arson loss at an "insured location" or who robs, steals or burglarizes any covered person's property. We will also pay an eligible person providing assistance in the recovery of stolen property, 10% of the value of the recovered property, up to a maximum of $1,000. The deductible does not apply.

An eligible person means that person designated by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

1) An "insured";

2) A relative of an "insured";

3) An employee of a law enforcement agency;

4) An employee of a business engaged in property protection;

5) Any person who had custody of the property at the time the loss occurred; or

6) Any person involved in the crime.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 62 of 104 PageID #: 65

## CLASSIC COVERAGE ENHANCEMENT

### Limited Water Back-up And Sump Discharge Or Overflow Coverage

We will pay up to $10,000 for direct physical loss, not caused by negligence of any "insured", to property covered under Section I caused by water, or waterborne material which:

a. Originates from within the dwelling where you reside and backs up through sewers and drains; or

b. Overflows or is discharged from a:

    1) Sump, sump pump; or

    2) Related equipment;

    even if such overflow or discharge results from the mechanical breakdown of the sump pump.

    This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

The limit of $10,000 is the most we will pay for any one loss.

We will pay only that part of the loss which exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D — Loss of Use.

Section I — Exclusion 1.c. Water Damage, paragraph 2) does not apply with respect to this additional coverage.

This coverage does not increase the Blanket Property Limit stated in the policy Declarations.

### SECTION I - PERILS INSURED AGAINST

The Perils Insured Against under Coverages A, B and C are deleted and the following substituted:

We insure against risks of direct loss to property described in Coverages A, B and C, only if that loss is a physical loss to property; however, we do not insure loss:

1. Under Coverages A, B and C:

    a. Excluded under Section I - Exclusions;

    b. Caused by:

        1) Freezing of plumbing, heating, air conditioning or automatic fire protective sprinkler systems or of a household appliance, or by discharge, leakage or overflow from within a system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being con-

structed, unless you have used reasonable care to:

        a) Maintain heat in the building; or

        b) Shut off the water supply and drain the system and appliances of water;

    2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

        a) Fence, pavement, patio or swimming pool;

        b) Foundation, retaining wall, or bulkhead;

        c) Pier, wharf or dock;

    3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    4) a) Wear and tear, marring, deterioration;

        b) Inherent vice, latent defect, mechanical breakdown;

        However, we do insure for loss caused by mechanical breakdown with respect to the coverage provided under Section I — Additional Coverages, Limited Water Backup And Sump Discharge Or Overflow Coverage, paragraph b.

        c) Smog, rust, or other corrosion, mold, wet or dry rot;

        d) Smoke from agricultural smudging or industrial operations;

        e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

        Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

f) Settling, shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings;

g) Birds, vermin, rodents, insects; or

h) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.

We do not cover loss to the system or appliance from which this water escaped.

Under items 1) through 4), any ensuing loss to property described in Coverages A, B and C not excluded or excepted in this policy is covered.

2. Under Coverage A and B:

a. Caused by vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

b. Involving collapse, other than as provided in Additional Coverages — 8. Collapse. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

3. Under Coverage C caused by:

a. Breakage of:

1) Eyeglasses, glassware, statuary, marble;

2) Bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property by or resulting from:

1) Fire, lightning, windstorm, hail;

2) Smoke, other than smoke from agricultural smudging or industrial operations;

3) Explosion, riot, civil commotion;

4) Aircraft, vehicles, vandalism and malicious mischief or volcanic eruption;

5) Collapse of a building or any part of a building;

6) Water not otherwise excluded;

7) Theft or attempted theft; or

8) Sudden and accidental tearing apart, cracking, burning or bulging of:

a) A steam or hot water heating system;

b) An air conditioning or automatic fire protective sprinkler system; or

c) An appliance for heating water;

b. Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

c. Refinishing, renovating or repairing property other than watches, jewelry and furs;

d. Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard motors;

e. Destruction, confiscation or seizure by order of any government or public authority;

f. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered.

SECTION I - EXCLUSIONS

1.c. Water Damage. The following paragraphs are added:

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Coverage C on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

# CLASSIC COVERAGE ENHANCEMENT

## SCHEDULED PERSONAL PROPERTY COVERAGE – CONDITIONS

If the Scheduled Personal Property Coverage Endorsement is added to the policy, Conditions 2. and 3. of that endorsement are replaced by the following Loss Settlement Condition:

### Loss Settlement

A.  Scheduled Articles

We agree with you that the amount of insurance shown for each article in the Schedule is the value of that article. We will pay that amount for a total loss to the article.

In case of a partial loss, we will pay the:

a.  Cost to repair or replace the lost or damaged property. If the restored value is less than the value just before the loss, we will pay you the difference. But our payments will not exceed the amount of insurance; or

b.  Difference in value before and after the loss if the article cannot be repaired or replaced.

If the cost to repair or replace and any cost for difference in value would exceed the amount of insurance, we will pay you for a total loss. You agree to surrender to us the damaged article or the remaining items of the pair, set or parts. However, in case of loss to a pair, set or parts of Fine Arts or Jewelry, you may choose to keep the remaining items of the pair, set or parts.

B.  Blanket Classes of Property

In case of loss to property other than Coins or Stamps insured on a blanket basis, we will pay the smallest of the:

a.  Actual cost incurred to repair, replace or restore;

b.  Replacement value of the lost or damaged articles; or

c.  Amount of insurance shown for that class of property.

When Coins or Stamps are covered on a blanket basis:

a.  We will pay the cash market value at time of loss. But we will not pay more than $1,000 on any unscheduled coin collection nor more than $250 for any one stamp, coin or individual article or any one pair, strip, block, series, sheet, cover, frame or card;

b.  We will not pay a greater proportion of any loss than the amount insured on blanket property bears to the cash market value at time of loss.

## SECTION II - ADDITIONAL COVERAGES

1.  **Claims Expenses**

The $50 limit per day in paragraph c. is deleted and replaced with a $250 limit per day.

4.  **Loss Assessment**

The $1,000 limit is deleted and replaced with a limit of $10,000.

The following Section II – Additional Coverage is added:

### Volunteer Wrongful Acts Coverage

We will pay the amount for which an "insured" becomes legally liable because of civil claims made against you or any "insured" for any actual or alleged wrongful act.

A wrongful act is any actual or alleged:

a.  Error;

b.  Misstatement;

c.  Action(s) or inaction(s);

d.  Neglect; or,

e.  Breach of duty

committed by you or any "insured" in that person's capacity as a volunteer.

The limit of liability for Volunteer Wrongful Acts Coverage is $10,000. This is the most we will pay for all losses arising out of a single wrongful act, regardless of the number of "insureds" or policy periods. A series of interrelated wrongful acts is considered a single wrongful act.

This coverage is excess over any other collectible insurance.

This coverage does not apply to liability for any of the following:

a.  "Bodily injury", "property damage" or "personal injury";

b.  Other than monetary damages;

c.  Fines or penalties imposed by law or matters deemed uninsurable by law;

d.  Arising out of an "insured's" failure or inaction in obtaining or maintaining insurance, including any error or inaction as to the amount, form or provisions of the insurance;

## CLASSIC COVERAGE ENHANCEMENT

e. Arising out of an "insured's" dishonesty. However, we will defend an "insured" for alleged dishonesty until:

   1) A judgment establishes the "insured's" actual or intentional dishonesty; or

   2) The expenses we incur in defending an "insured" exceed $10,000.

   whichever comes first;

f. Based upon or attributable to an "insured's" gain of any personal profit or advantage which the "insured" was not legally entitled to receive;

g. Return of any payments given an "insured" without the previous approval of the Board of Directors of the corporation or association. With this approval, these payments will be considered to have been illegal;

h. An accounting of profits made from the purchase or sale of securities as required by any federal or state law;

i. An "insured's" failure to register securities as required by any federal or state law;

j. Arising out of, or in any way related to, discrimination in violation of any statute, ordinance or law which prohibits such discrimination;

k. Arising out of any:

   1) Nuclear reaction;

   2) Nuclear radiation; or,

   3) Radioactive contamination;

   whether controlled or uncontrolled or however caused, or;

   4) Any consequences of any of these.

l. Arising out of any actual or alleged wrongful act committed by an "insured" in their capacity as an elected or appointed public official or member of any governmental body.

If a claim or suit is brought against you or any "insured" alleging a wrongful act we will provide defense costs for the counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. The claim must be covered under this Volunteer Wrongful Acts Coverage. If we defend a claim or suit for a wrongful act, we will pay, in addition to your Wrongful Acts Limit of Liability, the expenses we incur in defending a claim or suit. Our duty to defend or settle ends when the expenses we incur exceed $10,000. In addition to these expenses, we will pay:

a. Premiums on appeal bonds to release attachments in any suit we defend;

b. Up to $100 per day for loss of earnings, but not other income, for you or an "insured" because of attendance at trials or hearings at our request;

c. Other reasonable expenses incurred by you or an "insured" at our request;

d. Expenses incurred by us and costs taxed against you or an "insured" in any suit we defend;

e. Interest accruing after a judgment is entered and before the loss is paid in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

We are not obligated to defend suits brought against you or an "insured" in any country where we are prevented from defending because of laws or other reasons. However, we will pay any expense incurred with our written consent for the "insured's" defense.

Our obligation to pay the above costs ends when our limit of liability for Volunteer Wrongful Acts Coverage has been exhausted.

Section II - Additional Coverages, 1. Claim Expenses, does not apply to a claim or suit under Volunteer Wrongful Acts Coverage.

All other provisions of this policy apply.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 66 of 104 PageID #: 69

## SECTION I - EXCLUSIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Under SECTION I – EXCLUSIONS, the first two sentences are deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event:

1) Results in widespread damage or affects a substantial area; or

2) Is caused by or results from an act of nature, an act of man or is otherwise caused.

Exclusion 1.c. Water Damage is deleted and replaced by the following:

c. Water Damage, meaning:

1) Flood, including but not limited to, flash flood, surface water, waves, including tidal wave and tsunami, seiche, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

2) Water which:

a) Backs up through sewers or drains; or

b) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

3) Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

4) Waterborne material carried or otherwise moved by any of the water referred to in c.1) through c.3) of this Exclusion.

This Exclusion c. applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system whether natural, man-made or is otherwise made.

However, direct loss by fire, explosion or theft resulting from any of the above, in c.1) through c.4), is covered.

All other provisions of this policy apply.

# ADDITIONAL CHARGES AND FEES ENDORSEMENT

All Coverage Parts included in this policy are subject to the following conditions.

This endorsement describes the charges and fees "you" agree to pay when "you" use one of the plans "we" offer. For the purpose of this endorsement only, "you" and "your" also means the person responsible for paying for this insurance coverage and for making the decision to keep this coverage in force. For the purpose of this endorsement only "we", "us" or "our" also means the company on the declarations page that issued this policy.

## ADDITIONAL CHARGES AND FEES

In addition to the premium listed on the declarations page, "you" may be required to pay other charges and fees depending on the payment plan "you" have selected and "your" payment history.

### I. Billing Charges

"You" will be required to pay installment charges (Billing Charges) as shown below unless "you" pay the premium in full for the entire policy term on or before the policy effective date.

A. If "you" make payments to "us" via recurring charge to "your" credit/debit card pursuant to a company approved payment plan for which "you" have authorized "us" to charge/debit recurring payments, a $_____ Billing Charge will be charged for each payment transaction.

B. If "you" make payment to "us" via "our" automatic recurring withdrawal of payment due from "your" checking or savings account, a $_____ Billing Charge will be charged for each payment transaction.

C. If "you" make payments to "us" other than shown in A. or B. above, a $_____ Billing Charge will be charged for each bill.

### II. Other Charges And Fees Which May Be Associated With "Your" Policy Based Upon "Your" Payment History

Nothing in this section II shall be deemed to require "us" to continue or reinstate "your" policy if "we" do not receive "your" payment when due.

A. LATE CHARGES

"We" may accept late payment from "you". The fact that "we" may accept late payment from "you" one or more times does not effectuate any waiver of "our" right to cancel or refuse to reinstate "your" policy at other times when "your" payment is not timely.

If "we" do not receive payment within three (3) calendar days after its due date, a Late Charge in the amount of $_____ will be added to "your" balance. This charge will be included on the next bill issued along with any applicable billing charges.

B. RETURNED PAYMENT FEES

If "your" payment to "us" is justifiably dishonored or not permitted by the financial institution to which "you" directed "we" should receive payment, "you" must pay "us" a $_____ Returned Payment Fee. This fee will be included on the next bill issued after "we" receive notice of the dishonor from the financial institution.

C. REINSTATEMENT FEES

"You" must pay "us" a Reinstatement Fee if "we" agree to reinstate "your" policy after it has been cancelled for non-payment during the policy term. The fee, which will be no greater than $_____, will be added to "your" balance and will be included on the first bill issued after the reinstatement.

### III. Cumulative Nature of Charges and Fees

The charges and fees set forth above in section II may be cumulative. For example, a late payment that "we" agree to accept could result in one or more additional Billing Charge(s), Late Charges, Returned Payment Fees, or Reinstatement Fees.

All other provisions of this policy apply.

**BC 0001 (10 11)**

## RESIDENCE SAFETY PACKAGE

For a premium credit, you have installed:

      a.  Smoke detector(s);

      b.  Deadbolt lock(s); and

      c.  Fire extinguisher(s).

You agree to maintain these items in working order. You also agree to notify us promptly of any change made to them or if they are removed.

**VK 1012 (Ed. 02 85)**

# SINKHOLE LOSS COVERAGE – TENNESSEE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**DEFINITIONS**

The following definitions are added:

1. "Sinkhole activity" means settlement or systematic weakening of the earth supporting property. The settlement or systematic weakening must result from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.

2. "Sinkhole loss" means actual physical damage to a building:

   a. Arising out of; or

   b. Caused by;

   sudden settlement or collapse of the earth supporting such building. The settlement or collapse must result directly from subterranean voids created by the action of water on limestone or similar rock formation.

**SECTION I – PROPERTY COVERAGES**

The following is added:

**Sinkhole Loss Coverage**

We insure for direct physical loss to property covered under Section I caused by a "sinkhole loss". However, under Section I, Coverage C shall apply only if there is structural damage to a building caused by "sinkhole activity".

**SECTION I – EXCLUSIONS**

The Earth Movement Exclusion does not apply with respect to the coverage provided by this endorsement.

All other provisions of this policy apply.

**HO 25 99 (01 07)** @ ISO Properties, Inc., 2006

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULE*

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | * |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | * |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

## DEFINITIONS

The following definition is added:

"Fungi"

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

## SECTION I – PROPERTY COVERAGES

**Additional Coverages**

The following Additional Coverage is added:

"Fungi", Wet Or Dry Rot, Or Bacteria

a. The amount shown in the Schedule above is the most we will pay for:

1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

1) Number of locations insured under this endorsement; or

2) Number of claims-made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

When the Special Personal Property Coverage, Special Coverage - Dwelling Or Personal Property or Classic Coverage endorsement is attached to the policy, the endorsement is changed as follows:

VS 2478 (08 11)

Includes copyrighted material of Insurance Services Office With its permission. Copyright, Insurance Services Office, 2001

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 71 of 104 PageID #: 74

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

Paragraph 1.b.4)c) is deleted and replaced by the following:

    c) Smog, rust or other corrosion;

(This is item 2.e.3 in Form Unit Owners Coverage-A)

Paragraph 1.b.4)(i) is added:

    (i) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

(This is item 2.e.9 in Form Unit Owners Coverage-A)

When the Elite or Ultimate Coverage Endorsement is attached, the endorsement is changed as follows:

Paragraph 3.d. is deleted and replaced by the following:

    d. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 3.e.3. is deleted and replaced by the following:

    3. Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

For purposes of this coverage, the following paragraph is added :

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II – CONDITIONS

Condition A. Limit Of Liability is deleted and replaced by the following:

A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims-made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is damaged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is deleted and replaced by the following:

B. Severability Of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions, A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

SECTION I AND II – CONDITIONS

Condition P. Policy Period is deleted and replaced by the following:

1. Policy Period

This policy applies to loss or costs which occur during the policy period.

All other provisions of the policy apply.

# NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS

## LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises";

4. Limits coverage for property used off the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item 9. imposes that limit on "business" property off the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11.

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

HO 04 96 (04 91)     Copyright, Insurance Services Office, Inc., 1990

# UNINSURED MOTORISTS COVERAGE - TENNESSEE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE

| Uninsured Motorists Coverage | Limit Of Liability | Premium | | |
|---|---|---|---|---|
| | | Auto 1 | Auto 2 | Auto 3 |
| 1. Bodily Injury and Property Damage | $_____ each person<br>$_____ each accident<br>$_____ each accident | $ _____ | $ _____ | $ _____ |
| 2. Bodily Injury Only | $_____ each person<br>$_____ each accident | $ _____ | $ _____ | $ _____ |

I. **Part C - Uninsured Motorists Coverage**

Part C is replaced by the following:

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; and

2. "Property damage" caused by an accident if the Schedule or Declarations indicates that both bodily injury and property damage Uninsured Motorists Coverage applies.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle." With respect to coverage under Section 2. of the definition of "uninsured motor vehicle," we will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle" have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer, owner or operator of the "uninsured motor vehicle" and we:

a. Have been given written notice of such tentative settlement sent certified mail return receipt requested or by some other method with written verification; and

b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of the written notification required by this endorsement.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this endorsement means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Property damage" as used in this endorsement means injury to or destruction of:

1. "Your covered auto."

2. Any property owned by a person listed in 1. or 2. of an "insured" while contained in "your covered auto."

D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. For which the sum of the limits of liability available for payment to an "insured" under all policies, bonds and securities applicable at the time of the accident:

a. Is less than the limit of liability for this coverage; or

Copyright, Insurance Services Office, Inc., 1998

b. Has been reduced by payment to persons other than the "insured" to an amount which is less than the limit of liability for this coverage.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits, or causes an accident resulting in "bodily injury" or "property damage" without hitting:

a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying"; or

c. "Your covered auto."

If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proven by clear and convincing evidence. We will only accept competent evidence other than evidence provided by an occupant of:

a. "Your covered auto," if "your covered auto" is involved in the accident.

b. The vehicle you or any "family member" are "occupying," if you or any "family member" are "occupying" a vehicle other than "your covered auto" at the time of the accident.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Legally denies coverage; or

b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent. This exclusion (B.1.) does not apply to a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle."

2. When "your covered auto" is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

4. For the first $200 of the amount of "property damage" to the property of each "insured" as the result of any one accident. This exclusion (B.4.) does not apply if:

a. We insure "your covered auto" for both collision and uninsured motorists property damage coverage; and

b. The operator of the "uninsured motor vehicle" is positively identified and is solely at fault.

5. If the property is contained in or struck by a motor vehicle (other than "your covered auto") owned by you or any "family member."

C. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

a. Workers compensation law; or

b. Disability benefits law.

Copyright, Insurance Services Office, Inc., 1999

2. Any insurer of property.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. The limit of Property Damage Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

a. Workers compensation law; or

b. Disability benefits law.

C. No payment will be made for loss paid or payable to the "insured" under Part D of the policy.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part B of this policy.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits law.

**OTHER INSURANCE**

A. If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy, any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any one policy or provision of coverage.

B. Subject to Paragraph A., with respect to "bodily injury" to an "insured":

1. While not "occupying" a vehicle, only the policy or provision, under which the injured person is an "insured," that provides the highest limit of liability of uninsured motorists coverage, will apply. No other policies or provisions of coverage with lesser limits of liability will apply. If two or more policies or provisions of coverage provide the highest limit of liability, they will share the loss equally.

2. While "occupying" a vehicle owned by that "insured," only the uninsured motorists coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply.

3. While "occupying" a vehicle not owned by that "insured," the following will be the priorities of recovery:

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 77 of 104 PageID #: 80

| First Priority | The uninsured motorists coverage applicable to the vehicle the "insured" was occupying at the time of the accident. |
|---|---|
| Second Priority | If the first priority is exhausted, only the policy or provision, applicable to a vehicle under which the "insured" is a named insured, that provides the highest limit of liability of uninsured motorists coverage. |
| Third Priority | If the first and second priorities are exhausted, only the policy or provision, applicable to a vehicle under which the "insured" is other than a named insured, that provides the highest limit of liability of uninsured motorists coverage. |

If two or more policies or provisions of coverage in the second or third priority provide the highest limit of liability, they will equally share the loss applicable to that priority. No policies or provisions of coverage with lesser limits of liability will apply to the second or third priority.

## ARBITRATION IN THE EVENT OF OUR CONSENT TO A FULL LIMITS SETTLEMENT OFFER FROM A LIABLE PARTY

The following provision applies with respect to arbitration proceedings that are subject to the requirements of the Tennessee Uninsured Motorists Coverage statute regarding a full limits settlement offer from a liable party:

A. If a tentative settlement is made between an "insured" and the insurer, owner or operator of the "uninsured motor vehicle" for the full limits of all liability policies or bonds available to the party on whose behalf the tentative settlement is made, and:

1. We receive written notice from the "insured", sent certified mail return receipt requested or by some other method with written verification, of the "insured's":

   a. Intent to accept the offer thereby releasing the party on whose behalf the offer is made; and

   b. Agreement to submit the uninsured motorists claim to binding arbitration;

2. We receive written notice from the insurer of the "uninsured motor vehicle", sent certified mail return receipt requested or by some other method

with written verification, of the offer, and such insurer:

   a. Provides verification of coverage upon request; and

   b. Confirms to us that the owner or operator of the "uninsured motor vehicle" agrees to cooperate in connection with the arbitration of the Uninsured Motorists claim; and

3. We consent to the tentative settlement in writing, sent certified mail return receipt requested or by some other method with written verification, within 30 days from receipt of both notices described in Paragraphs 1. and 2. above, thereby waiving our right to recover payment from the owner or operator of an "uninsured motor vehicle" in exchange for their written agreement to cooperate in connection with the arbitration;

then all issues of tort liability and damages arising out of the ownership, maintenance or use of the "uninsured motor vehicle" shall be arbitrated. However, if the settlement does not release all parties alleged to be liable to the "insured", arbitration of the uninsured motorist claim shall not be conducted until all such parties have been conducted until all such parties have been fully and finally disposed by settlement, final judgment or otherwise.

Disputes concerning coverage under this Part may not be arbitrated and shall be decided by a court of competent jurisdiction.

B. An arbitrator shall be selected by agreement of the parties. If they cannot agree on an arbitrator, either party may request a judge of a court of record in the county in which the arbitration is pending to designate three potential arbitrators. The parties shall then agree upon one of the three arbitrators so designated.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Rules of law as to procedure and evidence applicable to the state courts where the arbitration is being conducted will apply.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 78 of 104 PageID #: 81

D. Expenses will be paid as follows:

1. Except for the arbitrator's fee, each party will pay for the expenses it incurs.

2. If the arbitrator's award is:

   a. Less than or equal to the total amount collected by the "insured" by way of settlements or judgments plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, the "insured" will pay the arbitrator's fee.

   b. Greater than the total amount collected by the "insured" by way of settlements or judgments plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, we will pay the arbitrator's fee.

E. Any decision made by the arbitrator will be binding.

### ARBITRATION OF OTHER DISPUTES BETWEEN AN "INSURED" AND US

The following provisions apply with respect to arbitration proceedings that are NOT subject to the requirements of the Tennessee Uninsured Motorists Coverage statute regarding a full limits settlement offer from a liable party:

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured"; from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of

law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Tennessee. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

### ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under Section 2. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer, owner or operator of the "uninsured motor vehicle".

We have 30 days after we have received such notification and any other written notification required by the insurer of the "uninsured motor vehicle" to either:

1. Consent in writing to the settlement thereby waiving our rights against the insurer, owner or operator of the "uninsured motor vehicle" and requiring arbitration of all issues of tort liability and damages arising out of the ownership, maintenance or use of the "uninsured motor vehicle"; or

2. Advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

II. Part F - General Provisions

The following is added to the Our Right To Recover Payment provision in Part F:

### OUR RIGHT TO RECOVER PAYMENT

Our rights under Paragraph A. with respect to coverage under Section 2. of the definition of "uninsured motor vehicle" do not apply with respect to the insurer, owner or operator of an "uninsured motor vehicle" if we have been given prompt written notice of a tentative settlement between an "insured" and the insurer, owner or operator of an "uninsured motor vehicle"; and we:

Copyright, Insurance Services Office, Inc., 1999

## UNINSURED MOTORISTS COVERAGE - TENNESSEE

1. Consent to a settlement for the full limits of all liability insurance policies or bonds available to the owner or operator of an "uninsured motor vehicle" and we agree to arbitrate; or

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement,

within 30 days after receipt of the written notification required by this endorsement.

However, if we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover the advanced payment, unless judgment is rendered in favor of the owner or operator of an "uninsured motor vehicle".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1999

# COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D- Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 (12 99)
Copyright, Insurance Services Office, Inc., 1999

**Package Plus**
**INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Description of Your Covered Auto(s) | Increased Limits Transportation Expenses Coverage Premium |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE

When there is a loss to a "your covered auto" described in the Schedule or in the Declarations for which a specific premium charge indicates that Increased Limits Transportation Expenses Coverage is afforded, or to a "non-owned auto":

1.   Coverage for Transportation Expenses Coverage provided under Part D of this policy is increased to $35 per day up to a maximum of $1050.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, with permission.

Copyright, Insurance Service Office, Inc. 1993

**AUTO 750 (06 94)**

**Package Plus**

## AUTO – CHANGES TO YOUR POLICY FOR THE STATE OF TENNESSEE

### SECTION III - PERSONAL AUTO COVERAGE

### LIABILITY COVERAGE

The following exclusion is added to Part A, Section A:

We do not provide Liability Coverage for any person for bodily injury to you or any "family member."

The Other Insurance provision of Part A is replaced by the following:

### Other Insurance

If there is other applicable liability insurance:

1. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, any insurance we provide for a vehicle you do not own will be primary insurance if:

    a. The vehicle is insured under a policy affording coverage to a named insured engaged in the business of:

       1) Selling;      5) Testing;
       2) Repairing;    6) Road testing;
       3) Servicing;    7) Parking; or
       4) Delivering;   8) Storing;

    motor vehicles. This applies only if the person using the vehicle:

       1) Is operating the vehicle with the permission of the owner; and

       2) Is neither the person engaged in such business or that person's employee or agent; or

    b. The vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for the operation of the vehicle.

2. Any insurance we provide for a vehicle you own shall be excess to that of a person engaged in the business of:

    a. Storing;     c. Servicing; or
    b. Parking;     d. Repairing;

    motor vehicles, if the accident occurs while the vehicle is in that person's possession, custody or control.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

### UNINSURED MOTORISTS COVERAGE

### Insuring Agreement

Item C.4.3. is deleted

ARBITRATION is deleted and replaced with the following:

ARBITRATION IN THE EVENT OF OUR CONSENT TO A FULL LIMITS SETTLEMENT OFFER FROM A LIABLE PARTY

The following provision applies with respect to arbitration proceedings that are subject to the requirements of the Tennessee Uninsured Motorists Coverage statute regarding a full limits settlement offer from a liable party:

A. If a tentative settlement is made between an "insured" and the insured, owner or operator of the "uninsured motor vehicle" for the full limits of all liability policies or bonds available to the party on whose behalf the tentative settlement is made; and:

    1. We receive written notice from the "insured" sent certified mail return receipt requested or by some other method with written verification, of the "insured's";

    2. We receive written notice from the insurer of the "uninsured motor vehicle", sent certified mail return receipt requested or by some other method with written verification, of the offer, and such insurer:

        a. Provides verification of coverage upon request; and

        b. Confirms to us that the owner or operator of the "uninsured motor vehicle" agrees to cooperate in connection with the arbitration of the Uninsured Motorists claim; and

    3. We consent to the tentative settlement in writing, sent certified mail return receipt requested or by some other method with written verification, within 30 days from receipt of both notices described in Paragraphs 1. and 2. above, thereby waiving our right to recover payment from the owner or operator of an "uninsured motor vehicle" in exchange for their writ-

Includes copyrighted material of the Insurance Services Office, with its permission
Copy Insurance Services Office, Inc., 2000

ten agreement to cooperate in connection with the arbitration; then all issues of tort liability and damages arising out of the ownership, maintenance or use of the "uninsured motor vehicle" shall be arbitrated. However, if the settlement does not release all parties alleged to be liable to the "insured," arbitration of the uninsured motorist claim shall not be conducted until all such parties have been fully and finally disposed by settlement, final judgment or otherwise.

Disputes concerning coverage under this Part may not be arbitrated and shall be decided by a court of competent jurisdiction.

B. An arbitrator shall be selected by agreement of the parties. If they cannot agree on an arbitrator, either party may request a judge of a court of record in the county in which the arbitration is pending to designate three potential arbitrators. The parties shall then agree upon one of the three arbitrators so designated.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Rules of law as to procedure and evidence applicable to the state courts where the arbitration is being conducted will apply.

D. Expenses will be paid as follows:

1. Except for the arbitrator's fee, each party will pay for the expenses it incurs.

2. If the arbitrator's award is:

   a. Less than or equal to the total amount collected by the "insured" by way of settlements plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, the "insured" will pay the arbitrator's fee.

   b. Greater than the total amount collected by the "insured" by way of settlements or judgments plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, we will pay the arbitrator's fee.

E. Any decision made by the arbitrator will be binding.

## ARBITRATION OF OTHER DISPUTES BETWEEN AN "INSURED" AND US

The following provisions apply with respect to arbitration proceedings that are NOT subject to

the requirements of the Tennessee Uninsured Motorists Coverage statute regarding a full limits settlement offer from a liable party:

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured"; from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Tennessee. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

The lead-in paragraph to Part E is replaced by the following:

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us

# AUTO -- CHANGES TO YOUR POLICY FOR THE STATE OF TENNESSEE

## PART F - GENERAL PROVISIONS

Part F is amended as follows:

A.   The following is added to the **Our Right To Recover Payment** Provision:

### OUR RIGHT TO RECOVER PAYMENT

We shall be entitled to recovery under Paragraph A. or B. only after the person has been fully compensated for damages.

### ENDORSEMENTS APPLICABLE TO PART D COVERAGES

Endorsement PP0305 is deleted and replaced by the following:

### PP 03 05 0302 LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance, with respect to the interest of the loss payee, shall not become invalid because of your fraud- lent acts or omissions. However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee, we shall, to the extent of payment, be subrogated to the loss payee'' rights of recovery.

All other provisions of this policy apply

## SPLIT LIABILITY LIMITS

**SCHEDULE (Entries may be left blank if shown elsewhere in this policy for this coverage.)**

| | | |
|---|---|---|
| Bodily Injury Liability | $ _____ | each person |
| | $ _____ | each accident |
| Property Damage Liability | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

**PP 03 09 (04 86)**            Copyright, Insurance Services Office, Inc., 1985

# SPLIT UNINSURED MOTORISTS LIMITS

SCHEDULE (Entries may be left blank if shown elsewhere in this policy for this coverage.)

| | | |
|---|---|---|
| Bodily Injury Liability | $_____ | each person |
| | $_____ | each accident |
| Property Damage Liability | $_____ | each accident |

The first paragraph of the Limit of Liability provision in the Uninsured Motorists Coverage Endorsement is replaced by the following:

## LIMIT OF LIABILITY

The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. The limit of Property Damage Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

**PP 04 04 (04 86)**          Copyright, Insurance Services Office, Inc., 1985

# ELECTRONIC EQUIPMENT COVERAGE

The following changes are being made to **PART D – COVERAGE FOR DAMAGE TO YOUR AUTO.**

## Exclusions

Exclusion 4. is deleted and replaced by the following:

4. Loss to:

   a. any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

      1. Radios and stereos;
      2. Tape decks;
      3. Compact disk systems;
      4. Navigation systems;
      5. Internet access systems;
      6. Personal computers;
      7. Video entertainment systems;
      8. Telephones;
      9. Televisions;
      10. Two-way mobile radios;
      11. Scanners; or
      12. Citizens band radios.

   b. records, disks or other media used with the equipment described in 4a.

   Exclusion (4a.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto" along with accessories used with this equipment.

## Limit of Liability

Item D. is being added:

D. The total Limit of Liability for all losses of electronic equipment that reproduces, receives, or transmits audio, visual, or a data signal, which is permanently installed within the auto in a location within the auto not used by the auto manufacturer for installation of such equipment, shall be the lesser of:

   a. The actual amount to repair or replace the damaged or stolen item; or

   b. $1,000.

(This is item C. in PP 0001 (12 89))

Includes copyrighted material of the Insurance Services Office, with its permission.
Copyrighted Insurance Services Office Inc., 2004

**AU 909 (06 05)**

**IMPORTANT NOTICE**
**Fair Credit Reporting Act**

We are required under Public Law 91-508 to advise you that part of our underwriting procedure may include an investigative consumer report. This is a routine inquiry in which information is obtained in personal interviews with your neighbors, friends or acquaintances. The reports typically concern a person's character, general reputation, personal characteristics and mode of living. If a report is made, you can be assured it will be handled in strict confidence.

We will be pleased to provide further information on the nature and scope of a report, if one is made, upon written request to the Personal Lines Office servicing your policy. The address of the Personal Lines Office servicing your policy can be obtained from your agent or broker.

AK 1838 03-89

# IMPORTANT NOTICE REGARDING OUR PRIVACY POLICY

The Companies listed below have policies and practices that respect the privacy of our customers and consumers. If you have Personal Lines Coverage with us or if you have an insurance transaction involving such coverage, this notice applies to you. It pertains to your nonpublic personal information. We shall refer to it as "Information" in this notice.

We reserve the right to revise this policy at any time. We will send you a new notice if changes are made that will result in other disclosures of your Information.

## Types of Information We May Collect

We may collect Information about you that we receive from:

- You on applications and other forms. Examples include your name, address, date of birth, phone number, social security and driver license numbers;
- Your agent;
- Your transactions with our affiliates, others, or us. Examples include your policy's account balance, your premium payment history, and your bank account number; and
- Outside sources such as consumer reporting agencies, including motor vehicle records, credit reports and claim history reports.

## Types of Information We May Disclose, And To Whom

We may disclose all of the Information above, with some exceptions, to other companies.

For instance, we may share your Information with companies that perform marketing for us or with financial institutions that have joint marketing agreements with us. If we do, we may disclose to those companies all of the information described above, although we will not disclose your nonpublic personal health information, without your permission, for the sole purpose of joint marketing.

We will not share your Information with anyone else without your permission unless:

1. They are helping us service or process a transaction, or
2. We are otherwise permitted or required by law to do so.

Examples of others with whom we may share your Information without your permission include:

- People or organizations that perform a business function for us. Examples are a company that helps us:
  1. print payment coupons,
  2. adjust or investigate claims,
  3. program software to help us process customers' transactions; or
  4. market our own products or minimize unnecessary marketing to you.
- Your agent or broker;
- Regulatory and law enforcement authorities, such as government offices or courts which subpoena records;
- Insurance support organizations which gather data to help deter or prevent insurance crimes;
- Other insurance companies or support organizations for an insurance transaction involving you. An example is the purchase of reinsurance;
- Businesses which conduct actuarial or research studies;
- Our affiliates, for internal or agency audits of the marketing of an insurance product or service; and
- A company that may acquire a line of business or function or book of business from us.

**Security of Your Information**

We have procedures and policies to help us protect your Information from unauthorized use or access. At our companies, we restrict access to protected information to the employees who have a business need for it. When we share Information with companies who work on our behalf, we protect it where required by federal law with a confidentiality agreement. We also have physical, electronic and procedural safeguards to guard your Information.

**If You Are an Internet User**

If you use the Internet and access the website of one or more of our companies, it may have other information on your use of that website.

**STATE EXCEPTIONS**

This notice is not intended for use in Arizona, California, Connecticut, Georgia, Maine, Minnesota, Montana, Nevada, North Carolina, Ohio, Oregon or Virginia. If you have Personal Lines Coverage with us in one of these states, or are involved in an insurance transaction involving such coverage in one of these states, additional privacy provisions also apply. Contact the company or your agent for a copy of the privacy policy applicable in your state.

UNITRIN AUTO AND HOME INSURANCE COMPANY, KEMPER INDEPENDENCE INSURANCE COMPANY, UNITRIN PREFERRED INSURANCE COMPANY, UNITRIN ADVANTAGE INSURANCE COMPANY, TRINITY UNIVERSAL INSURANCE COMPANY, VALLEY PROPERTY & CASUALTY INSURANCE COMPANY, VALLEY INSURANCE COMPANY, UNITRIN SAFEGUARD INSURANCE COMPANY, UNITRIN COUNTY MUTUAL INSURANCE COMPANY, MERASTAR INSURANCE COMPANY, TRINITY UNIVERSAL INSURANCE COMPANY AS REINSURER FOR HOME STATE COUNTY MUTUAL INSURANCE COMPANY

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 91 of 104 PageID #: 94

**IMPORTANT NOTICE**

Your agent, the person from whom you bought your policy, can help you with any questions you may have concerning your policy. In addition, you may contact our office shown below. Our staff will respond promptly to your questions.

Kemper Auto and Home
P.O. Box 3327
Scranton, PA 18505
Tel. 1-877-252-7878

**VS 1047 (05 03)**

## CLAIM SERVICE DAY AND NIGHT!

## WHAT TO DO IN CASE OF DAMAGE TO YOUR DWELLING OR PERSONAL PROPERTY

- Call the Fire department or police authorities.
- Do whatever is necessary to protect your property from further loss.
- Make an inventory of damaged or missing personal property.
- Notify the Company immediately at: 1-888-252-2799.

| | |
|---|---|
| **National Claim reporting number:** <br> **1-888-252-2799** <br> Choose one of the following options: <br> Option 1 - Report a new Auto Glass only claim <br> Option 2- Report a new Auto Towing only claim <br> Option 3 - Report any other new claim <br> Option 4 - Speak to a member of our Claim Team <br> Notify the Company immediately. | **National Claim reporting number:** <br> **1-888-252-2799** <br> Choose one of the following options: <br> Option 1 - Report a new Auto Glass only claim <br> Option 2- Report a new Auto Towing only claim <br> Option 3 - Report any other new claim <br> Option 4 - Speak to a member of our Claim Team <br> Notify the Company immediately. |
| Cut along line | Cut along line |

AK 5295 (06 09)

## STATEMENT REGARDING FLOOD INSURANCE

**Please Note: This policy does NOT cover losses from flood.**

Generally, the standard homeowner's insurance policy does not provide coverage for flooding, surface water that enters the home or rising water. However, coverage for these types of losses may be available through the Federal Government's National Flood Insurance Program ("NFIP") or through other sources.

You can obtain information about the National Flood Insurance Program by contacting your insurance company or your insurance agent or by going on the internet to www.FLOODSMART.GOV or by calling 1-800-427-4661. Here are some important facts you should know:

- Flood insurance policies are available for any home located in a community that is a participant in the NFIP.

- Some lenders, as a condition of your mortgage, will require that you purchase flood insurance. You should confirm with your mortgage lender or the NFIP, before settlement, if you are required to purchase flood insurance. Even if you are not required to purchase flood insurance, you should consider purchasing it as additional protection for your home.

- You do not have to be located in a special flood hazard area or be close to a body of water to experience flooding. The risk of flood is present for most homes as floods can be caused by storms, melting snow, heavy rains, dam failures or other causes.

- You must complete a separate application in order to purchase flood insurance; it is not part of your homeowner's insurance application.

- Flood insurance policies have two types of coverage: structural coverage for your home and the items that are permanently attached and contents coverage for your personal property within the home. Structures and contents coverages are purchased separately and carry separate deductibles.

- Generally, there is a thirty (30) day waiting period for a new flood insurance policy to become effective; although there are some exceptions to this general rule.

- As flood insurance through the NFIP is created by federal law, flood claims are adjusted and paid in a different manner than your homeowner's insurance claims.

**AK 5458 (11 06)**

## NOTICE OF COVERAGE INCREASE

The Section I, Coverage A, provided by your Homeowners or Package Plus insurance policy may increase. The cost to rebuild your home typically increases based on inflation and changes in building costs. To assist you in keeping adequate coverage, we automatically increase your Section I coverages annually. If you feel as if your Coverage A amount is inappropriate or if you feel it should be higher due to changes you have made to your home, such as a recent modification, update, or remodel of the dwelling, please contact your agent. While we increase your coverages automatically this is not a guarantee that your home is adequately insured. To make sure that your home is insured correctly please consult with your agent.

**AK 5888 (11 10)**

## TENNESSEE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**IL N 098 (09 03)**                    © ISO Properties, Inc., 2003

# TENNESSEE UNINSURED MOTORISTS COVERAGE SELECTION/REJECTION

**Policy Number:**                             **Policy Effective Date:**

**Company:**                                  **Producer:**

**Applicant/Named Insured:**

Tennessee law permits you to make certain decisions regarding Uninsured Motorists Coverage. This document describes this coverage and the options available.

You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorists Coverage and your options with respect to this coverage.

This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations Page(s) and/or Schedule(s) for complete information on the coverages you are provided.

## BODILY INJURY AND PROPERTY DAMAGE UNINSURED MOTORISTS COVERAGE

Bodily Injury Uninsured Motorists Coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an automobile accident. Also included are damages due to bodily injury that result from an automobile accident with a hit-and-run vehicle whose owner or operator cannot be identified.

Property Damage Uninsured Motorists Coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of property damage caused by an automobile accident. Also included are damages due to property damage that result from an automobile accident with a hit-and-run vehicle whose owner or operator cannot be identified.

Unless rejected or a lower limit is selected, Bodily Injury Uninsured Motorists Coverage will be included in your policy at limits equal to the limits of your Bodily Injury Liability Coverage (split limits) or Combined Single Limit of Liability. If you purchase Bodily Injury Uninsured Motorists Coverage, then you may also purchase Property Damage Uninsured Motorists Coverage or you may reject such coverage.

Please review your coverages carefully and if you wish to make any change, complete and sign the form and return it to your agent. The options you select will apply to subsequent renewal policies unless we receive a written request for change from you at a later date. Coverage changes will become effective upon our receipt and approval of your request.

Please indicate one choice from A., B., or C. by initialing next to the appropriate item(s) and signing below.

Case 3:14-cv-00519   Document 1-1   Filed 02/18/14   Page 97 of 104 PageID #: 100

**A. Selection Of Bodily Injury And Property Damage Uninsured Motorists Coverage**

Please indicate your choice by initialing next to the appropriate item(s) in 1. OR 2. and signing below.

Please note that we only offer Uninsured Motorists Coverage limits up to the Liability Coverage limits of your policy, even though higher limits may appear below.

(Initials)

1. I select Bodily Injury And Property Damage Uninsured Motorists Coverage at limits equal to my Liability Coverage.

_____ OR

(Initials)

2. I reject Bodily Injury And Property Damage Uninsured Motorists Coverage at limits equal to my Liability Coverage and select the following lower limit(s):

(Choose one Split Limits Bodily Injury option and one Property Damage limit option, OR one Combined Single Limit option from the following):

| (Initials) | Split Limits Bodily Injury | (Initials) | Property Damage | OR | (Initials) | Combined Single Limit |
|---|---|---|---|---|---|---|
| _____ | $  25,000/50,000 | _____ | $      15,000 | | _____ | $        60,000 |
| _____ | 50,000/100,000 | _____ | 25,000 | | | 75,000 |
| _____ | 100,000/100,000 | _____ | 50,000 | | _____ | 100,000 |
| _____ | 100,000/300,000 | _____ | 100,000 | | _____ | 200,000 |
| _____ | 250,000/500,000 | _____ | 200,000 | | _____ | 300,000 |
| _____ | 300,000/300,000 | _____ | 250,000 | | _____ | 500,000 |
| _____ | 500,000/500,000 | _____ | 500,000 | | | Other Limit |
| | Other Limit | | Other Limit | | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | | | |

_____     _____
Signature Of Applicant/Named Insured                              Date

B. Rejection Of Property Damage Uninsured Motorists Coverage And Selection Of Bodily Injury Uninsured Motorists Coverage Only

Please indicate your choice by initialing next to the appropriate item(s) in 1. OR 2. and signing below.

Please note that we only offer Uninsured Motorists Coverage limits up to the Liability Coverage limits of your policy, even though higher limits may appear below.

(Initials)

1. I reject Property Damage Uninsured Motorists Coverage and select ONLY Bodily Injury Uninsured Motorists Coverage at limits equal to the limits of my Bodily Injury Liability Coverage (Split Limits) or Combined Single Limit for Liability Coverage.

_____    OR

(Initials)

2. I reject Property Damage Uninsured Motorists Coverage and select ONLY Bodily Injury Uninsured Motorists Coverage at the following lower limits:

_____

(Choose one Split Limits Bodily Injury option, OR one Combined Single Limit option from the following lower limits):

| (Initials) | Split Limits Bodily Injury | OR | (Initials) | Combined Single Limit |
|---|---|---|---|---|
| _____ | $  25,000/50,000 | | _____ | $    60,000 |
| _____ | 50,000/100,000 | | _____ | 75,000 |
| _____ | 100,000/100,000 | | _____ | 100,000 |
| _____ | 100,000/300,000 | | _____ | 200,000 |
| _____ | 250,000/500,000 | | _____ | 300,000 |
| _____ | 300,000/300,000 | | _____ | 500,000 |
| _____ | 500,000/500,000 | | | Other Limit |
| | Other Limit | | _____ | $ _____ |
| _____ | $ _____ | | | |

_____     _____
Signature Of Applicant/Named Insured                Date

**C. Rejection Of Bodily Injury And Property Damage Uninsured Motorists Coverage**

**(Initials)**

_____        I reject Bodily Injury And Property Damage Uninsured Motorists Coverage.

_____        _____
Signature Of Applicant/Named Insured                                     Date

. . . and your local independent agent present:

# KEMPER CLEAR CHOICE CLAIM SERVICE®

## Automobile Glass and Body Repair 24/7

In today's busy world you can't afford to have damage to your automobile keep you off the road. Call toll-free 1-888-252-2799 and we will assist you in handling all of your automobile glass or body damage claim needs, quickly and easily.

- **Accessible** – You can call 24 hours a day, seven days a week, for fast, instant claim service.
- **Simple** – There's no paperwork required from you.
- **Convenient** – We will arrange repair of your automobile at a convenient location.
- **Workmanship guaranteed** – If you utilize a shop that is part of our network, we warranty the work for as long as you own or lease your vehicle.

Interested? Here's how you can put Kemper Clear Choice Claim Service® to work for you:

Have your policy number handy and dial our toll-free claim reporting hotline at
**1-888-252-2799.**

- *To report auto 'glass only' damage*        *Select Option # 1, then Option # 1*

  A customer service representative records your claim information and verifies your insurance coverage in just minutes and then links you with a repair facility for the work to be performed at the shop, your home or business. Whichever is most convenient for you. Remember, as always with Kemper Clear Choice Claim Service®, if your windshield can safely be repaired instead of replaced, we waive any applicable deductible so your repair is free.

- *To report "more than just glass" damage to your auto*    *Select Option # 1, then Option # 3*

  A customer service representative records your claim information and verifies your insurance coverage in just minutes and then assists you in your selecting the repair facility most convenient for you.

That's all there is to it. So when you need us call
Kemper Clear Choice Claim Service® Toll-Free at 1-888-252-2799.

**AK 4569 (10 09)**

# Fair Credit Reporting Act – Important Notice

Thank you for choosing
to provide your insurance coverage.

We consider a variety of factors, such as the coverage you select, your claim history, and your insurance score to determine the amount that you pay for your insurance. We believe this approach enables us to offer our customers competitive prices.

The Fair Credit Reporting Act (FCRA) requires us to send this notice telling you that we are not currently able to offer you our very lowest premium rate for your new or renewal policy, based at least in part upon your insurance score (which is a score derived from your credit history).

Under the FCRA, you can also get a free copy of your consumer report once a year from each of the nationwide consumer reporting agencies by contacting:

Annual Credit Report Request Service
P.O. Box 105281
Atlanta, GA 30348-5281

Telephone: 1-877-322-8228
www.annualcreditreport.com

Since we obtained your insurance score from LexisNexis, a consumer reporting agency, under the FCRA you have the right to obtain a free copy of your consumer report and information in your file from LexisNexis within 60 days of receiving this notice. This report will be sent directly to you by LexisNexis and you have the right to dispute the accuracy or completeness of the report with LexisNexis. To obtain a report from LexisNexis, contact:

LexisNexis Consumer Center
P.O. Box 105289
Atlanta, GA 30348

Telephone: 1-800-456-6004
www.consumerdisclosure.com

If corrections are made to your consumer report, please tell your insurance agent. You may request that we reorder your insurance score and, if appropriate, re-price your policy.

Last time we obtained your insurance score, LexisNexis identified these factors in order of significance as having the greatest impact upon that score:

LexisNexis did not decide how to rate your policy or make any other decision about your insurance premium. The companies, or company, involved in determining the premium for your policy and in taking the action disclosed in this notice are listed below:

1. The company that issued your policy at the stated premium:

2. The company that employed the underwriting, including placement with issuing company and setting premium: Merastar Insurance Company.

Thank you for your business.